# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH ROSE SMITH,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:19-cv-00571-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 15, 16, 17) |

## I.

## INTRODUCTION

Elizabeth Rose Smith by and through her guardian ad litem Shane Smith ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

///

///

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 8.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A Title XVI application for supplemental security income was protectively filed on behalf of Plaintiff who was a minor on August 13, 2015. (AR 85.) Plaintiff's application was initially denied on January 5, 2016, and denied upon reconsideration on May 24, 2016. (AR 100-103, 106-109.) Plaintiff requested and received a hearing before Administrative Law Judge Shiva Bozarth ("the ALJ"). Plaintiff appeared for a hearing on March 5, 2018. (AR 36-72.) On June 6, 2018, the ALJ found that Plaintiff was not disabled. (AR 12-30.) The Appeals Council denied Plaintiff's request for review on February 26, 2019. (AR 3-5.)

### A. Hearing Testimony

Plaintiff's father, Shane Smith testified at the March 5, 2018 hearing. (AR 43-48, 59-60, 69-70.) Plaintiff misses a lot of school due to anger issues. (AR 43.) She has ADHD and does not get along very well with other children. (AR 43.) He makes her go to school, but does not want the school to come back and sue him because she hit someone. (AR 44.) Her doctor signs off for her to miss school. (AR 44.) She is attending school more often this year because her teachers are working with her. (AR 44.) She had problems with her teachers working with her in the past. (AR 44.) She is getting along with other students better this year because they are keeping the bullies away from her. (AR 44-45.) Her school environment is more sheltered. (AR 45.)

Plaintiff misses school at least three times a week due to her anger or behavioral issues. (AR 47.) Plaintiff does not receive any accommodations for homework or tests. (AR 47.) She reads at a kindergarten level. (AR 47.) He does not know her grade point average. (AR 47.) The school will not hold her back because she was held back in first grade. (AR 47-48.) Her anger outbursts have not changed. (AR 48.)

Plaintiff does not relieve herself during school and waits until she gets home to go to the bathroom. (AR 45.) She needs someone there with her when she is taking a shower or bath due to anxiety and it is comforting. (AR 45-46.) She does not resist bathing. (AR 46.) She is afraid of going to the bathroom herself. (AR 46.)

Plaintiff takes her medication as prescribed. (AR 44.) Plaintiff has been diagnosed with ADHD but her doctor will not prescribe any medication for it. (AR 59-60.) The doctor has not given any reason why he has not prescribed medication for Plaintiff's ADHD. (AR 69-70.) They are treating her for anxiety. (AR 70.)

Plaintiff testified at the March 5, 2018 hearing. (AR 49-58.) Plaintiff just turned thirteen years old. (AR 49-50.) She got a lot of stuff for her birthday. (AR 50.) Her favorite thing was Monster High Dolls. (AR 50.) Plaintiff does not go to the movies. (AR 51.) The last movie she saw at home was Anna and Elsa. (AR 51.) Her favorite song from Frozen is Let it Go. (AR 51.)

She "kind of" works hard at school. (AR 52.) ELA and social studies are a little easier than her other classes. (AR 52.) She has trouble writing because she has dyslexia. (AR 52.) She has one friend, Alejandra, that she finds it easier to talk to. (AR 52-53.) She likes that Alejandra is unique. (AR 53.) Alejandra is unique because she has braces on her feet. (AR 53.) Alejandra can walk without them, but it is kind of hard. (AR 53.)

Her favorite class at school is ELA. (AR 53.) She gets to read stories when she is finished with her work. (AR 53.) She has not got to read many stories in there lately. (AR 54.) She does not like to read and has no one to read to her. (AR 54.) She has a sixteen year old sister. (AR 54.) Plaintiff is in seventh grade and is both excited and worried about going to high school the year after next. (AR 54-55.)

Plaintiff does not like going to school but does not know why. (AR 55.) She does not get mad at people at school. (AR 55.) She does not get mad at her classmates or her teachers. (AR 56.) She does her homework in a different kind of class. (AR 56.) She has trouble with math and science. (AR 56.) Alejandra does not go to her house and Plaintiff does not go to Alejandra's house. (AR 56-57.) Alejandra is in the same class for homework. (AR 57.) Everyone is quiet in the classroom. (AR 57.)

Plaintiff has a partner in science named Maria. (AR 57.) Maria is kind of a good partner and kind of a bad partner because sometimes she helps Plaintiff and sometimes she does not. (AR 57-58.) Sometimes Maria knows the answers and will not share them with Plaintiff. (AR 58.) Maria is not mean but Maria's friends are kind of mean because they act like they are

Plaintiff's friend but they are not. (AR 58.)

Dr. David Huntley, a medical expert also testified at the hearing. (AR 59-69.) Dr. Huntley found that it was hard to say from the record that Plaintiff's impairments were severe. (AR 61.) He found that her impairments were not severe. (AR 61.) Plaintiff has asthma, but she would not even meet the old listing. (AR 62.) There is a conflict in the record. (AR 62.) The record notes severe asthma but when you look at her visits for asthma they are considered mild. (AR 62.) The records are contradictory and she has never been hospitalized for asthma. (AR 62.) She sees the doctor for medication refills. (AR 62.)

Plaintiff failed the grade test but the school passed her anyway. (AR 62.) Dr. Huntley found this significant combined with her IQ which is fairly close to meeting the listing. (AR 62.) Her attention is two standard deviations out. (AR 62.) The record indicates a severe impairment in attention, but when you have someone with this problem they also have anxiety and depression which is also noted in the record. (AR 63.) Her speech, fluency and everything is pretty normal. (AR 63.) There is plenty of documentation to see the attention issue. (AR 63.) All of these things that fall in line after that are due to the fact that she has not been treated for her ADHD. (AR 63.) Dr. Huntley opined that Plaintiff would not have a severe attention impairment if she was being treated for her ADHD. (AR 63.) She is receiving occupational therapy, but that is not a very successful form of therapy. (AR 63-64.) Therapy in the classroom would be helpful, but therapy outside the classroom setting would not transfer over. (AR 64.)

Plaintiff has severe or you could say marked impairments in attention including tasks over pace because she has not been treated. (AR 64.) Her ability to acquire and use information may be impacted due to inner attention which may be an impairment, it certainly would be for pace. (AR 64.) There is no testing in the record to indicate what she has retained which is critical. (AR 64.) If she had achievement test scores it would show what she was supposed to have retained. (AR 64.) The lack of such testing is glaring in the record. (AR 64.) Plaintiff does not equal or functionally equal a listing. (AR 65.)

Usually in these cases the child has been administered achievement testing which is helpful because sometimes individuals are not doing well due to emotional issues. (AR 65-66.)

Based on the evaluation of the teacher who was working with Plaintiff, Plaintiff has a marked impairment for completion and pace. (AR 66.) But it is glaring that she is not being treated for the disorder. (AR 66.) People who are not treated develop depression and anxiety. (AR 66.) Dr. Huntley stated that he could not determine whether Plaintiff's intellectual functioning was caused by the untreated ADHD or whether it was a separate issue because she was not receiving treatment. (AR 66.) Plaintiff's diagnosed anxiety could be due to the untreated ADHD. (AR 67.) He sees children that come in for anxiety expecting to be put on Prozac or Valium and he treats them with a stimulant for ADD and their anxiety disappears. (AR 67.) Anxiety is a condition when you expect that there will be a bad outcome and the bad outcome here has not been addressed. (AR 67.) It is unclear to Dr. Huntley whether the intellectual functioning, learning disability, or anxiety are severe impairments or are just symptoms of the untreated ADHD. (AR 67-68.) Dr. Huntley did opine that Plaintiff's ADHD is a severe impairment. (AR 68.)

### B. ALJ Findings

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff was born on February 23, 2005. Therefore, she was a school-age child on August 13, 2015, the date application was filed and is currently an adolescent.
- Plaintiff has not engaged in substantial gainful activity since August 13, 2015, the application date.
- Plaintiff has the following severe impairments: attention deficit hyperactivity disorder ("ADHD") and the following impairments are severe in combination with the attention deficit disorder: learning disability, anxiety, and borderline intellectual functioning.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings.
- Plaintiff has not been disabled as defined in the Social Security Act since August 13, 2015, the date the application was filed.

(AR 18-30.)

## III.

## LEGAL STANDARD

An individual under the age of 18 will be considered disabled where they have "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 U.S.C. § 416.906. The Social Security regulations provide a three-step process in determining whether a child is disabled. See 20 C.F.R. § 416.924. First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the child is not engaged in substantial gainful activity, then the analysis proceeds to step two. Step two requires the ALJ to determine whether the child's impairment or combination of impairments is severe. Id. The child will not be found to have a severe impairment if it constitutes a "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c) However, if there is a finding of severe impairment, the analysis proceeds to the final step which requires the ALJ to determine whether the impairment or combination of impairments "meets, medically equals or functionally equals" the severity of a set of criteria for an impairment in the listings. 20 C.F.R. § 416.924(d).

An impairment will be found to be functionally equivalent to a listed impairment if it results in marked limitations in two areas or extreme limitations in one area of functioning. 20 C.F.R. § 416.926a(a). To determine functional equivalence, the following six domains, or broad areas of functioning, are utilized: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a(b). Limitations in functioning must result from the child's medically determinable impairments. 20 C.F.R. § 416.924a(a).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).

In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by failing to properly weigh the opinions of Plaintiff's teachers and Dr. Huntley which led to the ALJ finding that Plaintiff did not have marked impairments in attending and completing tasks and does not functionally equal the listings. Plaintiff argues that the ALJ failed to provide germane reasons to reject the opinions of Plaintiff's teachers that she had marked limitations in attending to and completing tasks. Plaintiff also argues that Dr. Huntley opined that Plaintiff had marked limitations in this area and therefore she functionally meets the listing criteria.

Defendant counters that Plaintiff incorrectly argues that the ALJ erred in finding her ability to attend to and complete tasks did not rise to the level of a marked impairment. Defendant contends that the ALJ properly considered the six functional equivalence domains and

found that in attending and completing tasks Plaintiff had less than a marked limitation. Defendant argues that the ALJ properly relied on the opinions of the state agency physicians who found that Plaintiff did not have any marked limitations other than in the area of acquiring and using information. Plaintiff relies on the opinion of Dr. Huntley, but Dr. Huntley questioned why Plaintiff was not receiving treatment for her ADHD and conditions that are subject to treatment cannot form the basis of entitlement to disability benefits. Further, Defendant argues that Plaintiff's teachers are not medical professionals and cannot opine that her limitations are marked limitations.

Plaintiff replies that the regulations state that teachers may be in the best position to opine as to the level of a child's limitations or impairments and the ALJ is required to weigh their opinions. Plaintiff asserts that the ALJ failed to give germane reasons to reject the opinions of Plaintiff's teachers or explain the weight accorded to their opinions.

### A. Functional Equivalence for Children

The Social Security regulations provide that if a severe impairment does not meet or medically equal any listing, they "will decide whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). A severe impairment functionally equals a listing if it results in "marked" limitations in two domains of functioning or in an "extreme" limitation in one domain. Id.

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i). A child of any age will be found to "have a 'marked' limitation when [they] have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [their] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(2)(iii). Standardized testing provides

important information about deficits in development and functioning in terms of standard deviations and percentiles. 20 C.F.R. § 416.926a(e)(1)(ii), (e)(2)(iii). However, test scores alone do not establish marked or extreme limitation in a domain. 20 C.F.R. §§ 416.924a(a)(1)(ii), 20 C.F.R. 416.926a(e)(4). No single piece of information taken in isolation can establish whether the child has a "marked" limitation in a domain. 20 C.F.R. § 416.926a(e)(4)(i).

The Commissioner is to consider test scores together with reports and observations of school personnel and others. 20 C.F.R. § 416.924a(a); 20 C.F.R. § 416.926a(e)(4)(ii). In assessing functional equivalence, the ALJ also considers how much extra help the child needs, how independent he is, how he functions in school, and effects of medication or other treatment. 20 C.F.R. § 416.926a(a). In evaluating this type of information, the ALJ considers how the child performs activities as compared to other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). This information comes from examining and non-examining medical sources as well as "other sources," such as parents, teachers, case managers, therapists, and other non-medical sources who have regular contact with the child. See, e.g., 20 C.F.R. § 416.913(a)(2), (d); Social Security Ruling (SSR) 98–1p, IV.B. (Sources of Evidence ).

Here, Plaintiff contends that the ALJ erred in finding that she was not markedly limited in attending and completing tasks. The domain of attending and completing tasks considers how well the child is able to focus and maintain attention, how well they begin, carry through and finish activities, including the pace at which activities are performed and the ease at which the child changes them. 20 C.F.R. § 416.926a(h)(1)(i).

In making a determination of disability, "the ALJ must consider the 'combined effect' of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting 20 C.F.R. § 416.923). "However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.' " Howard ex rel. Wolff, 341 F.3d at 1012 (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); and Vincent v. Heckler, 739 F.2d 1393, 1394–95 (9th Cir. 1984)).

/ / /

1. <u>Lay Witness Testimony</u>

In evaluating child disability cases the opinions of a child's teachers are highly probative. As is the case with lay witness testimony, the educators' opinions are "other sources" which must be considered and the ALJ must explain the weight provided to them. See Social Security Ruling (SSR) 06-03P (Considering Opinions & Other Evidence from Sources Who Are Not 'Acceptable Med. Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies). The ALJ cannot disregard the testimony without providing reasons germane to the witness. <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006). Further, "other source" opinions alone are insufficient to establish functional equivalence, which is an administrative finding that is reserved to the Commissioner. 20 C.F.R. §§ 416.927(d), 416.926a(n); <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1067 (9th Cir. 1997); SSR 06–03p.

The ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis and where the ALJ provides germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. <u>Molina v. Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012). Here, the ALJ discussed the witness testimony in the aggregate and set forth the findings.

The ALJ considered the school records.

> School records indicate the claimant has gotten Resource Specialist Program help since 2013 Exhibit 17E [AR 302-344]. The claimant had frequent absences that affected her progress Exhibit 17E pp. 3, 34 [AR 335]; 18E p. 2 [AR 346]. She needed more time to process information, she was quiet but would speak up for herself, she did better in small groups, and she struggled socially Exhibit 17E p. 3 [AR 304]. She was mostly unable to do independent work but she completed work as a class Exhibit 17E p. 3 [AR 304]. She had no behavioral issues but she struggled to keep pace Exhibit 17E p. 3 [AR 304]. The claimant did okay with simple math but she lost the concept in complex problems Exhibit 17E p. 3 [AR 304]. In December 2016, the claimant's speech was 80 percent intelligible, gross/fine motor skills were not a concern, and her social/emotion functioning was not a concern Exhibit 17E p. 3 [AR 304]. She liked her material to be organized and there was no concern over her health Exhibit 17E p. 3 [AR 304]. She had been consistently below standards in math and English Exhibit 18E p. 14 [AR 358]. The most recent Individual Education Plan notes that the claimant was not absent as frequently but her attendance still caused her to get behind Exhibit 12E pp. 3 [AR 267]. She had been improving in communication, she was getting confident answering the classroom phone, and she had passing grades in English, social studies, math, and reading intervention, but she had an F in science due to

missing assignments and a D in physical education due to absences Exhibit 12E pp. 3, 4 [AR 267, 268]. She was able to work well individually and in groups Exhibit 12E p. 3 [AR 267].

(AR 21.)

The claimant's fifth grade RSP teacher, Lynn Harris, completed a teacher questionnaire dated October 2015 Exhibit 2F pp. 1-8 [AR 370-377]. She indicated the claimant was at a kindergarten to first grade reading and written language level and a second grade math level Exhibit 2F p. 1 [AR 370]. She indicated there were obvious to very serious problems in acquiring and using information, and noted that the claimant needed teacher support, verbal and written sentence frames, and lots of visual aids Exhibit 2F p. 2 [AR 371]. She reported the claimant had no to very serious problems in areas related to attending and completing tasks and she usually did not complete homework assignments Exhibit 2F p. 3 [AR 372]. There were no problems in interacting and relating with others except slight daily problems using adequate vocabulary and grammar to express thoughts/ideas in general every day conversation Exhibit 2F p. 4 [AR 373]. However, she could understand almost all of the claimant's speech Exhibit 2F p. 5 [AR 374]. There were no problems in moving about and manipulating objects Exhibit 2F p. 5 [AR 374]. She had no to slight problems in caring for herself, except she had an obvious problem with using appropriate coping skills to meet daily demands of school environment and a serious problem with knowing when to ask for help Exhibit 2F p. 6 [AR 375]. I have considered this report and I give it some weight as the claimant's teachers are in a good position to accurately report her functional ability.

(AR 21-22.)

The claimant's sixth grade RSP teacher, Benjamin Ramirez, completed a teacher questionnaire dated May 2017 Exhibit 10E [AR 246-253]. He indicated mostly slight to obvious problems in acquiring and using information with serious problems in understanding school and content vocabulary and providing organized oral explanations and adequate descriptions Exhibit 10E p. 2 [AR 247]. He noted the claimant required constant support to understand basic concepts, had difficulty forming coherent sentences, and had a difficult time verbalizing needs and advocating for herself Exhibit 10E p. 2 [AR 247]. He indicated mostly no to slight problems in attending and completing tasks with an obvious problem in completing assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time Exhibit 10E p. 3 [AR 248]. He noted that without regular support the claimant falls behind Exhibit 10E p. 3 [AR 248]. Mr. Ramirez opined mostly no to slight problems in interacting and relating with others but with an obvious problem with making and keeping friends, relating experiences and telling stories, and introducing and maintaining relevant and appropriate topics of conversations, and a very serious problem with respecting/obeying adults in authority Exhibit 10E p. 4 [AR 249]. He specifically noted the claimant was painfully shy and showing signs of anxiety Exhibit 10E p. 4 [AR 249]. There were no problems with moving about and manipulating objects Exhibit 10E p. 5 [AR 250]. There were no to slight problems in most areas of caring for herself, but there was an obvious problem in identifying and appropriately asserting emotional needs and knowing when to ask for help Exhibit 10E p. 6 [AR 256]. Mr. Ramirez noted asthma and that the claimant missed one to two days a week due to anxiety per a doctor's note Exhibit 10E p. 7 [AR 257]. This report is also given some weight in making this decision as consistent with the overall record.

(AR 22.)

> The claimant's seventh grade teacher, Julia Lofy, completed a teacher questionnaire dated November 2017 Exhibit 13E [AR 287-295]. She noted the claimant's reading, math, and written language was at a first grade level Exhibit 13E p. 1 [AR 287]. She indicated mostly obvious problems in acquiring and using information with serious problems with understanding and participating in class discussions and providing organized oral explanations and adequate descriptions Exhibit 13E p. 3 [AR 289]. The claimant had no to slight problems in most areas related to attending and completing tasks with serious problems in completing class/homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time Exhibit 13E p. 4 [AR 290]. The claimant's teacher reported no problems in interacting and relating with others moving about and manipulating objects or caring for herself and she was not aware of the claimant's physical health Exhibit BE pp. 5, 6, 8 [AR 291, 292, 294]. I give this report some weight also. It appears fairly consistent with other teacher reports and also supports the increase in functioning associated with less absences.

(AR 23.)

The ALJ found that Plaintiff had less than a marked limitation in attending and completing tasks. (AR 26.) "The teacher questionnaires indicate some problems completing assignments. However, her grades have improved with fewer absences. (AR 26.) The consultative examiner indicated the claimant was able to persist. In addition, although she was quiet and shy during the hearing she was able to answer my questions appropriately." (AR 26.) In addressing the other functional areas, the ALJ also found that Plaintiff's grades and abilities had improved due to her improved attendance. (AR 25, 27.)

Plaintiff contends that the ALJ failed to provide any reasons for the weight provided to the reports of Ms. Harris, Mr. Ramirez, and Ms. Lofy. However, the ALJ noted that Plaintiff has increased in her functioning since she has had less absences. Substantial evidence in the record supports that ALJ's findings that Plaintiff had increased functioning when she started attending school more frequently.

Plaintiff argues that Ms. Harris reported that she had serious problems organizing her own materials at school and carrying out multi-step instructions and that she had unexcused absences. Ms. Harris completed a teacher questionnaire on Plaintiff's overall functioning on October 14, 2015. (AR 370-377.) Ms. Harris stated that Plaintiff was absent one to two days per week. (AR 370.) She did not know the cause of Plaintiff's absences because most of them were

12

unexcused. (AR 376.) She opined that Plaintiff had serious problems in carrying out multi-step instructions, organizing her own things or school materials; and a very serious problem with completing class/homework assignments and working at a reasonable pace/finishing on time. (AR 372.) She noted that Plaintiff's homework assignments were usually not completed. (AR 372.)

Plaintiff had an IEP on August 18, 2016, in which it is noted that she had many absences this year that affected her progress. (AR 327.)

In her December 8, 2016 IEP, Plaintiff's reading intervention teacher states that her attendance is not consistent and the absences are affecting her progress. (AR 304.) Her ELA teacher reported that Plaintiff was often absent which is affecting her grades negatively. (AR 304.) She had not made any progress toward her goals due to her poor attendance. (AR 305-309.)

On March 13, 2017, it was noted that Plaintiff was absent at least fifty percent of the time. (AR 277.)

Mr. Ramirez completed a teacher questionnaire on Plaintiff's overall functioning on May 2, 2017. (AR 246-253.) He also noted that Plaintiff was absent one to two times per week and that she had a doctor's note concerning anxiety. (AR 246.) He opined that Plaintiff had an obvious problem with completing class/homework assignments, completing work accurately, and working at a reasonable pace/finishing on time. (AR 248.) She had a slight problem with organizing her own things or school materials. (AR 248.) He noted that she needs a lot of support at every moment of the day. (AR 248.) Without regular support she falls behind in his class. (AR 248.)

Plaintiff's November 7, 2017 IEP report by her ELA/Social Science instructor states that Plaintiff has had growth in student involvement and progress in the general curriculum. (AR 267.) She is communicating more with the teacher and knows the material when it is read aloud. (AR 267.) She can verbally tell the teacher the answers and then write them down when prompted. (AR 267.) The teacher noticed that she is coming to school more. (AR 267.) Her attendance is helping her stay on track and get her work done in a timely manner. (AR 267.)

The teacher did not have any major concerns since she is doing better and getting her work done. (AR 267.)

Her science teacher reported that she has improved on getting started on assignments without being reminded and tries to complete assignments. (AR 267.) She has been attempting all assignments that have been given. (AR 267.) There was still a concern about attendance because she would get behind due to her poor attendance and once she is behind she does not catch up. (AR 267.) Last year Plaintiff's attendance was not consistent, but attendance is much improved this year and she is there on time most days. (AR 267.)

In intervention she comes to class daily ready to work. (AR 268.) Plaintiff has grown in her ability to start assignments and persevere to finish. (AR 268.) It was reported that a lot of improvement had been seen in communication development, including being in class with less absences. (AR 268.)

On November 28, 2017, Ms. Lofty completed a teacher questionnaire on Plaintiff's overall functioning. (AR 287-295.) Plaintiff had some degree of absenteeism. (AR 287.) Like Mr. Ramirez, she opined that that Plaintiff had an obvious problem with completing class/homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time; and a slight problem organizing her own things or school materials. (AR 290.)

Plaintiff argues that the ALJ ignored the marked limitation in attending to and completing tasks despite evidence from all three of her teachers. But the ALJ provided a germane reason for the weight provided to these opinions, that Plaintiff had increased functioning and her grades improved when she started attending school more frequently and there is substantial evidence in the record to support this finding. Plaintiff points to evidence in the record to support a finding of marked limitations, but where the evidence is susceptible to more than one rational interpretation, the court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina, 674 F.3d at 1111.

The ALJ also noted that the teachers' statements are inconsistent with the testimony of the consultative examiner who indicated the claimant was able to persist. (AR 26.) Plaintiff had

a psychological assessment by Dr. Swanson on December 29, 2015. (AR 438-443.) Dr. Swanson found that Plaintiff had "the ability to engage in and sustain an activity at a pace that is mostly appropriate for her age." (AR 442.) An ALJ may reject lay witness testimony that conflicts with the medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ provided germane reasons to reject the testimony of Plaintiff's teachers.

2. Dr. Huntley's Testimony

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss, 427 F.3d at 1216).

Plaintiff argues that Dr. Huntley opined that she had marked limitations in attending and completing tasks because her performance on testing was two standard deviations below average. However, as stated above test scores alone do not establish marked or extreme limitation in a domain. 20 C.F.R. §§ 416.924a(a)(1)(ii), 20 C.F.R. 416.926a(e)(4). No single piece of information taken in isolation can establish whether the child has a "marked" limitation in a domain. 20 C.F.R. § 416.926a(e)(4)(i).

In assessing Plaintiff's attention, Dr. Huntley noted that the record showed that Plaintiff was two standard deviations "out of it". (AR 62.) Dr. Huntley referenced sensory processing findings by Kristen Otto Otrl during an occupational therapy evaluation on January 28, 2016. (AR 448.) He also referred to Dr. Fernandez treatment notes which indicates that Plaintiff is having difficulty getting the attention of her teacher which is causing increased stress and poor school performance. (AR 516.) Dr. Huntley appears to indicate that this is emotional. (AR 63.)

1  But Dr. Huntley opined that Plaintiff would not have a severe impairment for attention if she was being treated. (AR 63.) Dr. Huntley found that the record indications that Plaintiff had "severe or at least you could say marked impairments for attention and including tasks over pace" were because she had not been treated and were "a kind of misreading." (AR 64.) Dr. Huntley found that the teachers working with her did find that she had a marked impairment for completion and pace which would be two impairments. (AR 66.) But Dr. Huntley ultimately opined that Plaintiff did not functionally equal a listing. (AR 65.)

The ALJ addressed Dr. Huntley's testimony.

> The medical expert noted that he saw a lot of mentions of ADHD in the record but he questioned why she was not prescribed any treatment. He testified that the claimant had asthma that did not meet any listing and did not appear to be severe. The medical expert testified that he believed the claimant's emotional problems were attributed to the lack of treatment for ADHD. He also opined that occupational therapy was not suitable treatment for her condition. He opined the claimant had a marked restriction in her attention and he suggested the claimant's teachers were in the best position to evaluate her functioning. However, because the ADHD was not being treated it was unclear whether the anxiety and depression were severe impairments or if they were symptoms of ADHD. He said that ADHD was a severe impairment.

(AR 20.) The ALJ gave some weight to Dr. Huntley's testimony because the suitability of the claimant's treatment is not an area that this decision can consider. (AR 24.)

Although the ALJ stated that Dr. Huntley found that Plaintiff had a marked restriction in her attention, Dr. Huntley actually found that the record indications that Plaintiff had a marked limitation in attention and pace were a misreading of the record. Although Plaintiff's teachers found a marked impairment in completion and pace, Dr. Huntley found that Plaintiff's difficulties in attention and pace were due to the failure to provide treatment. Dr. Huntly opined that Plaintiff did not functionally equal a listing. To the extent that the ALJ misstated Dr. Huntley's findings it is harmless error which does not require reversal. Burch, 400 F.3d at 679; Molina, 674 F.3d at 1115. The ALJ gave some weight to Dr. Huntley's opinion because the suitability of the treatment being provided to Plaintiff was not an area that the ALJ was deciding. The ALJ did not reject the opinion of Dr. Huntley. In considering Plaintiff's limitations in attending and completing tasks, Dr. Huntley found that Plaintiff did not functionally equal a listing. (AR 64-65.)

16

The ALJ did not err by rejecting Dr. Huntley's opinion.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in evaluating the testimony of Plaintiff's teachers or the medical expert. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Elizabeth Rose Smith. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **March 16, 2020**

_____
UNITED STATES MAGISTRATE JUDGE